[No. A024834. First Dist., Div. Five. June 6, 1985.]

CITY OF SANTA ROSA, Plaintiff and Respondent, v.
INDUSTRIAL WASTE & DEBRIS BOX RENTALS, INC.,
Defendant and Appellant.

**COUNSEL**

Steven W. Forsberg for Defendant and Appellant.

Rene Auguste Chouteau, City Attorney, Bruce Leavitt, Assistant City Attorney, and Michael J. O'Toole, Deputy City Attorney, for Plaintiff and Respondent.

Richard K. Turner, Mary A. O'Gara and Turner & Sullivan as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**KING, J.**—In this case we hold that where a county adopts a plan to issue licenses to trash collection companies which give each company the sole right to collect trash in an area of the county, such a license is an "exclusive franchise or contract" within the meaning of Health and Safety Code section 4272.[1] Thus, such a license ends upon the completion of its specified term

---

[1] Unless otherwise indicated, all further statutory references are to the Health and Safety Code.

and the licensee has no entitlement to the additional five-year continuation rights section 4272 gives to the holders of nonexclusive licenses.

Industrial Waste & Debris Box Rentals, Inc. (Industrial) appeals from a judgment terminating its right to collect trash in a newly annexed portion of the City of Santa Rosa (City) after October 11, 1983. We affirm the judgment.

On February 16, 1983, the City annexed an area on its southern border. Two trash collection companies claim the right to collect in this area. One company, Redwood Empire Disposal, Inc. (Redwood), claims the exclusive right to collect in the area after October 11, 1983, because it holds an exclusive franchise to collect within the City limits. The other company, Industrial, was collecting in the area at the time of trial under a written agreement with the County of Sonoma (County). ■■■ Although this agreement expired on October 11, 1983, Industrial claims it may continue to collect in the area for five years after the date of annexation under the continuation rights provided in section 4272.

Section 4272 provides: "Where a local agency has authorized by franchise, contract, license, or permit, a solid waste enterprise to provide solid waste handling services and such services have been provided for more than three previous years, the solid waste enterprise may continue to provide such services up to five years after mailed notification to such enterprise . . . except that if the solid waste enterprise has an *exclusive franchise or contract* then the solid waste enterprise shall continue to provide such services and shall be limited to the unexpired term of the contract or franchise or five years, whichever is less." (Italics added.)

Thus, the issue is whether Industrial's agreement with the County should be determined to be nonexclusive, in which case Industrial is entitled to the five-year continuation right, or to be an "exclusive franchise or contract," in which case Industrial was only entitled to collect in the area until its agreement expired on October 11, 1983.

For the purpose of determining the nature of Industrial's agreement an examination of the County's trash collection history is necessary. Prior to 1976, the County experienced problems with more than one company collecting trash in some areas and no companies at all collecting in other less desirable areas. As a result, the County Board of Supervisors passed Resolution No. 56089 on December 20, 1976, which called for termination of the existing trash collection system and reissuance of licenses in accordance with a new plan which gave each company an exclusive collection area.

Since the resolution was adopted, each company has operated within its own prescribed exclusive territory, and there is some evidence that the County has acted to enforce the exclusivity of each territory. Redwood suggests that this existing practice, in combination with the 1976 resolution dividing the County into exclusive territories, is proof of a system of "exclusive franchises or contracts" within the meaning of section 4272.

Industrial argues that the County did not issue actual "exclusive franchises or contracts," but merely issued nonoverlapping licenses, reserving the right to issue overlapping licenses in the future, should the need arise. In support of this contention, Industrial points to the County's failure to revise the County code to allow the granting of official exclusive franchises. Although the 1976 resolution directed that such a revision take place, the code remained unrevised at the time of the 1983 trial.

The City, unable to determine which interpretation was correct, filed an action for declaratory relief on May 4, 1983. The trial court determined that the agreement was an "exclusive franchise or contract" within the meaning of section 4272, and that Industrial's collection rights in the annexed area therefore terminated on October 11, 1983. Industrial urges that its de facto exclusive arrangement should not be considered an "exclusive franchise or contract under section 4272," while Redwood urges the opposite conclusion.

Since neither the statute itself nor supplementary case law provide a definition for these words in context, it is necessary to look to "the intent of the Legislature" so as to "effectuate the purpose of the law." (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) In determining such intent, the words of the statute must be construed in context, keeping in mind the nature and obvious purpose of the legislation in which they appear. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

Here, an express statement of the legislative intent is set forth in section 4271: "The Legislature finds and declares as follows: . . . It is in the public interest to foster and encourage solid waste enterprises so that, at all times, there will continue to be competent enterprises willing and financially able to furnish needed solid waste handling services."

Industrial's principal argument is based on this statement of legislative intent. It claims that the only way there "will continue to be competent enterprises willing and financially able to furnish needed solid waste handling services" is if the statute is interpreted so that Industrial qualifies

for the five-year continuation right; to decide otherwise would harm Industrial and consequently harm solid waste enterprise, apparently by impairing the service available to its remaining customers.

This argument is without merit. At the outset, it is important to note that the stated legislative intent is to protect solid waste service *in general.* The only time a *particular* solid waste company merits protection is when solid waste service in general would be harmed. Here, there is no reason why solid waste service in general would be harmed if the statute were interpreted in the way which denies Industrial the continuation right. The exception clause of section 4272 presupposes that companies which have a formal exclusive agreement will not be harmed if the agreement is terminated upon its expiration date, and this presupposition logically applies to companies put in the same position by a de facto exclusive arrangement. Furthermore, to declare that Industrial's agreement is nonexclusive would, by definition, allow another company (Redwood) to collect in the annexed area at the same time, and such dual collection service is contrary to the public interest as determined by the County Board of Supervisors.

The language of the exception clause, when read in context, shows that the Legislature intended to deny the five-year continuation right to all trash collection companies which have an "exclusive franchise or contract" expiring in less than five years. The Legislature must have assumed that such a company would be able to anticipate and plan for its capital investments, financing and amortization, while keeping an eye to the date on which its agreement terminates. Whether the company actually does plan around its termination date, and whether harm is actually caused to the company or its customers as a result, is apparently immaterial. The mandatory language of the exception appears to leave no room for such inquiry.

Thus, the question in this case is not whether Industrial actually expected to be terminated on its termination date, or whether harm would actually be caused to Industrial or its customers, but whether a company with a de facto exclusive agreement would have sufficiently different expectations than a company with a formal exclusive agreement, such that the de facto exclusive agreement should not be treated as exclusive.

A company with a nonexclusive agreement needs the protection of the five-year continuation right because its existence is more precarious. In order to encourage such companies to capitalize sufficiently, the Legislature granted them this five-year right. Of course, competition could put these companies out of business at any time, but trash collection service would still be available and that is all that the public interest demands.

Industrial did not need this incentive to capitalize, for the County's de facto exclusive arrangement essentially put Industrial in the same position as a company with a formal exclusive agreement. The legislative action of the Board of Supervisors in passing a resolution dividing the County into exclusive territories, followed by the issuance of licenses in accordance with these territories, effectively assured Industrial that it would have the exclusive right to collect in its assigned territory, at least until its license terminated. This placed Industrial in the same position as a company with a formal exclusive agreement, so that it did not merit the protection of the exception clause. Therefore, the trial court properly held that the words "exclusive franchise or contract" include Industrial's de facto exclusive arrangement.

The judgment is affirmed.

Low, P. J., and Haning, J., concurred.

A petition for a rehearing was denied June 28, 1985, and appellant's petition for review by the Supreme Court was denied August 21, 1985.